The relief described hereinbelow is SO ORDERED.

Signed June 20, 2009.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

**In re:**

**KEITH JOHN PICHT and**          Case No. 08-20677
**TAMARA JEAN PICHT,**          Chapter 13
      **Debtors.**

**MEMORANDUM OPINION ON REMAND
CONFIRMING DEBTORS' CHAPTER 13 PLAN**

Confirmation of Debtors' Chapter 13 Plan is before the Court following remand by the United States Bankruptcy Appellate Panel for the Tenth Circuit ("BAP"). The BAP reversed the Order Confirming Chapter 13 Plan and struck from the record this Court's Memorandum Opinion Supplementing the Order Confirming Debtors' Chapter 13 Plan as being untimely entered. The BAP remanded and directed the Court enter its findings of fact and conclusions of law in accordance with the BAP's April 14, 2009, opinion.

Creditor Bank of the Prairie ("Bank") objects to Debtors' Chapter 13 plan. The issues are (1) whether a business loan originally secured by both personal property and a second mortgage on the Debtors' home qualifies for §1322(b)(2)'s anti-modification protection; and (2)

whether the underlying debt Debtors must pay the Bank for purposes of §1325(a)(5)(B)(i)(I)(aa) is the contractual debt or the *in rem* value of the Bank's lien.

**Findings of Fact**

The Bank extended financing to Debtors for their small business, a bar and grill. The SBA loan was secured by equipment, fixtures, inventory, accounts, instruments, chattel paper and general intangibles, an assignment of lease, and life insurance policies. The Debtors personally guaranteed the debt and provided a second mortgage on their residence. The business failed. Debtors' personal obligation to the Bank was discharged in Debtors' prior Chapter 7 case. Prior to filing this case, the personal property pledged as security for the loan was liquidated, leaving the second mortgage as the Bank's only collateral as of the petition date.

Debtors filed for Chapter 13 relief on March 28, 2008.[1] The Bank filed a proof of claim for $127,000.00. The Bank's second mortgage secures up to $126,000.00.[2] Debtors value their home at $300,000.00. The value of the first mortgage is $285,147.27. Thus, Debtors' plan proposes to strip down the Bank's lien, pay the Bank $14,852.73 as the value for the second mortgage, and leave the remaining unsecured portion of the Bank's claim discharged by the prior bankruptcy.

At the confirmation hearing, the Bank argued §1322(b)(2)'s restriction on modifying loans secured only by a security interest in debtor's principal residence applies because the Bank's sole remaining collateral is the second mortgage. In the alternative, the Bank argued Debtors' plan violates §1325(a)(5)(B)(i)(I)(aa) because Debtors propose to pay the Bank the value of its lien rather than its contractual debt.

---

[1] Debtors are not entitled to a discharge in this pending Chapter 13 case under §1328(f) because their prior Chapter 7 bankruptcy was filed on October 6, 2005, within four years of the date this case was filed.

[2] The proof of claim includes $1,000.00 in attorney's fees.

## Conclusions of Law

A general rule in bankruptcy is a secured claim may be modified in the debtor's plan.[3] A debtor's plan may propose to pay a partially secured creditor the value of his collateral and treat any remaining deficiency as unsecured.[4] However, §1322(b)(2) creates an exception to the general rule and prohibits bifurcating a "claim secured only by a security interest in real property that is the debtor's principal residence." The section is meant to protect traditional home mortgage lenders.[5] It is not meant to protect the business lender who happens to take an additional security interest in a principal's residence or homestead.[6] The creditor who takes a security interest in other collateral in addition to a security interest in the debtor's residence does not qualify for §1322(b)(2)'s protection, even where the only collateral which is still available to be levied against as of the petition date is the debtor's principal residence.[7] Because the Bank objects to confirmation based on §1322(b)(2)'s exception, the Bank has the burden of proof to show its claim falls within the protections afforded by the statute.[8]

The determinative factor is the language granting the security interests in the underlying loan documents, regardless whether additional collateral in fact exists.[9] If the loan documents provide for security in addition to the debtor's principal residence, then the creditor is not entitled to the benefits of §1322(b)(2). This holding follows the plain language of the statute, which by its express terms limits its application to claims "secured *only* by a security interest in

---

[3] 11 U.S.C. §1322(b)(2).
[4] 11 U.S.C. §506(a)(1).
[5] *Nobleman v. Am. Sav. Bank,* 508 U.S. 324, 331 (1993) (Stevens, J., concurring); *In re Johns*, 37 F.3d 1021, 1024 (3rd Cir. 1994); *In re Hammond,* 27 F.3d 52, 56-57 (3rd Cir. 1994); *In re Ferandos,* 402 F.3d 147, 151 (3rd Cir. 2005).
[6] *In re Larios,* 259 B.R. 675, 679 (Bankr. N.D. Ill. 2001); *In re Howard,* 220 B.R. 716, 718 (Bankr. S.D. Ga. 1998).
[7] *Id.* at 719; *Hammond*, 27 F.3d at 55-56; *In re Libby,* 200 B.R. 562, 567 (Bankr. D.N.J. 1996).
[8] *Larios,* 259 B.R. at 678 (citing *In re Petrella,* 230 B.R. 829, 832 (Bankr. N.D. Ohio 1999)).
[9] *Larios,* 259 B.R. at 678*; Howard,* 220 B.R. at 718.

real property that is the debtor's principal residence."[10]

The Bank concedes its loan was a business loan secured by personal property in addition to the second mortgage. Thus, the Bank does not qualify for the anti-modification exception. To be afforded the advantages of §1322(b)(2), the Bank needed to forego the grant of additional security at the time it entered the transaction.[11]

In the alternative to §1322(b)(2) protection, the Bank argues it must be entitled to retain its lien under §1325(a)(5)(B)(i)(I)(aa) until Debtors pay the entire contract debt because the Debtors are not entitled to discharge in this Chapter 13 case by virtue of §1328(f). The Bank's argument ignores a significant portion of this statute. Sections 1325(a)(5)(B)(i)(I)(aa), (bb), and (II) read:

> Except as provided in subsection (b), the court shall confirm a plan if – with respect to each allowed secured claim provided for by the plan – the plan provides that – the holder of such claim retain the lien securing such claim until the earlier of – the payment of the underlying debt *determined under nonbankruptcy law;* or discharge under §1328; and if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the *extent recognized by applicable nonbankruptcy law*.[12]

This language ("Amendment") was added under the provisions of BAPCPA.[13] It is common for a secured claim to be paid in full prior to discharge in a Chapter 13 bankruptcy. Pre-BAPCPA, there existed ample case law that upon full payment of the secured portion of a creditor's claim, but prior to the conclusion of the bankruptcy plan, the secured creditor could be compelled to release its lien in that creditor's collateral.[14] The Amendment provides that the lien release is not

---

[10] Emphasis added.
[11] *Hammond*, 27 F.3d at 57; *see also Johns*, 37 F.3d at 1021.
[12] Emphasis added.
[13] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).
[14] *See, e.g.*, *In re Murry-Hudson*, 147 B.R. 960 (Bankr. N.D. Calif. 1992) (even if debtor had not provided for the release of bifurcated claims upon payment, the auto lender would still be compelled to release its lien upon payment of its allowed secured claim); *In re Townsend*, 256 B.R. 881 (Bankr. N.D. Ill. 2001) (undersecured auto lender's objection to confirmation of plan that provided for release of vehicle lien upon payment of the secured

- 4 -

compelled until the underlying debt as determined under nonbankruptcy law owed to the secured creditor is paid, or the secured claim is paid and the bankruptcy case discharged.[15]  In other words, the purpose of the Amendment is to prevent a debtor from paying the secured portion of a creditor's claim through his plan and then immediately obtaining a lien release.  The plain language of the Amendment further states that upon satisfaction of the debt of the creditor as determined under nonbankruptcy law, such creditor may be obligated via a confirmed plan to release its lien.  If a debt is a liability on a claim, then as explained in more detail below, the Debtors' plan provides the payment of the Bank's underlying debt as determined under nonbankruptcy law.  For this reason, discharge is not a necessary predicate to require the Bank to release its lien since the other condition to the release of a lien under §1325(a)(5)(B)(i)(I) is met.  The applicable subsection as a prerequisite to confirmation of the Debtors' plan is thus fulfilled.

*Johnson v. Home State Bank*[16] is valuable to this Court's analysis.  In *Johnson*, as in this case, the debtor had previously filed a Chapter 7 bankruptcy and discharged his personal liability to a bank that held a mortgage in real estate and then subsequently filed a Chapter 13 bankruptcy plan to treat the bank's mortgage with payments over time.  The bank objected that the debtor

---

portion of the bifurcated claim was overruled); *In re Gray*, 285 B.R. 379 (Bankr. N.D. Tex. 2002) (same); *In re Castro*, 285 B.R. 703 (Bankr. D. Ariz. 2002) (same); *IRS v. Campbell*, 180 B.R. 686 (M.D. Fla. 1995) (same, as to perfected Internal Revenue Service tax lien).  *See also In re James*, 285 B.R. 114 (Bankr. W.D.N.Y. 2002) (During the Chapter 13 bankruptcy, the debtor paid in full the allowed secured claim of creditor but prior to discharge converted to a Chapter 7 bankruptcy.  The court held that after debtor received a Chapter 7 discharge, the seizure of his collateral violated the discharge injunction because the only claim the creditor still had was an unsecured claim, which had been discharged and the lien had been satisfied.). All of these cases involve a circumstance in which the creditor's claim was bifurcated via the "strip down" provision of §1325(a)(5)(B).

[15]  Of course, in this Debtors' case, a discharge will not ensue upon the Debtors' successful completion of the plan.  However, in most other respects, Debtors' bankruptcy proceedings remain unchanged.  For instance, the Debtors and property of the bankruptcy estate remain under the protective umbrella of the automatic stay.  If a plan has not already been confirmed in the case, then it is solely within the province of the Debtors to file and seek confirmation of a plan.  The Debtors may successfully complete such plan that provides for the treatment of their creditors and to have their case closed thereafter.  Even absent discharge in the Chapter 13 proceedings, the Debtors previously received a discharge in their Chapter 7 case and the Amendment does not foreclose the Debtors' right to pay the amount of the allowed secured claim and receive a lien release by the holder of the secured claim.

[16]  501 U.S. 78 (1991).

was no longer entitled to treat the bank's claim in a Chapter 13 plan because the debtor's personal liability had been discharged in the prior Chapter 7 proceeding. The Supreme Court rejected the bank's argument and ultimately found that the bankruptcy court properly confirmed the debtor's plan.[17] A mortgage lien is a claim against the debtor's real property that secures repayment of a debt. The general rule is that a lien is not affected by a Chapter 7 bankruptcy, absent an affirmative act typically undertaken by a Chapter 7 trustee or, less frequently, the debtor.

In the Pichts' case, the Bank's lien passed through the prior Chapter 7 bankruptcy case unaffected. However, the Pichts' liability on the debt to the Bank was discharged in the prior Chapter 7 bankruptcy. Prior to the Chapter 7 bankruptcy, the Bank enjoyed two legal mechanisms upon which to collect its debt. One was the Pichts' personal liability and the other was enforcement of its mortgage lien against the Pichts' homestead. The former was discharged in the prior Chapter 7 bankruptcy so the Bank was left with only its mortgage lien, *i.e.*, its *in rem* claim for payment. The *in rem* claim constitutes a right to payment from the proceeds of the homestead or the right to foreclose the creditor's lien in the homestead.[18]

The prior bankruptcy discharge extinguished the personal liability of the Debtors with respect to the debt owed the creditor.[19] However, "a bankruptcy discharge extinguishes only one mode of enforcing a claim--namely, an action against the debtor *in personam*--while leaving intact another--namely, an action against the debtor *in rem*."[20] Thus, the creditor has an enforceable *in rem* claim against the Debtors and such is a claim against the bankruptcy estate.[21]

---

[17] *Id.* at 80-81.
[18] *Id.* at 84.
[19] *Id.* at 84 n.5.
[20] *Id.* at 84.
[21] *See* § 102(2) wherein it states: "'claim against the debtor' includes claim against property of the debtor."

In other words, the Court must allow the claim if it is enforceable against *either* the Debtors *or* their property. "Thus, § 502(b)(1) contemplates circumstances in which a 'claim,' like the mortgage lien that passes through a Chapter 7 proceeding, may consist of nothing more than an obligation enforceable against the debtor's property."[22] This Court also considers it significant that the Supreme Court in *Johnson v. Home State Bank* stated with regard to plan confirmation in a Chapter 13 bankruptcy: "In addition, the bankruptcy court retains its broad equitable power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code.]'§105(a)."[23] It is noteworthy that the Amendment itself states that "if the case under this chapter is dismissed or converted without *completion of the plan*, such lien shall also be retained by such holder to the extent recognized by applicable non-bankruptcy law." (Emphasis added.) The Amendment itself contemplates completion of the plan by the debtor as a trigger to satisfaction of a creditor's lien; discharge is obviously not the only mechanism.

The *Johnson* opinion allowed the debtor to provide for the *in rem* claim in his plan. Upon confirmation, the plan is binding upon the debtor and each creditor.[24] The *in rem* claim only exists to the extent that there is value in the debtor's property in which the creditor holds a lien to secure the claim under §506(a). It is this unique species of *in rem* claim with which the Debtors must deal in the current bankruptcy case. As to these Debtors, any liability above the allowed secured claim does not exist, so all that remains for these Debtors is to pay the allowed secured claim, in other words, the *in rem* claim the Bank holds against the Debtors and the Estate. In this sense, the underlying debt, which can only constitute the *in rem* claim under non-

---

[22] *Id.* at 85.
[23] *Id.* at 88.
[24] *See* §1327(a) and *In re Mersmann*, 505 F.3d 1033 (10th Cir. 2007).

bankruptcy law, is satisfied upon payment of the allowed secured claim. This interpretation is in concert with the purpose and intent of the Amendment. The plain language of the Amendment readily supports this result, and at least one learned treatise recognizes the function of the Amendment:

> This amendment is apparently an attempt to overrule the results of cases under the prior language that, as discussed above, required elimination of the creditor's lien when the allowed secured claim had been paid.[25]

Under the Amendment, in the first instance, the words "underlying debt" are modified by "determined under nonbankruptcy law." In the second instance, should the case not reach discharge, the lien is retained to "the extent recognized by applicable nonbankruptcy law." The statute read as a whole states the secured creditor should receive in bankruptcy what he would receive outside bankruptcy. Under nonbankruptcy law, the Bank's lien is worth the value of its *in rem* claim, *i.e.*, the value of the homestead less the value of the first mortgage. Thus, in bankruptcy, the Bank's *in rem* claim has this approximate value under §506(a). If Debtors had not filed for bankruptcy, the Bank could have foreclosed its interest, but the Bank could only recover the home's value to the extent it exceeded the value of the first mortgage and other superior encumbrances, such as real estate taxes. Any deficiency is not collectible against Debtors personally. The Bank should not obtain a more favorable equitable result in bankruptcy than it would be able to obtain outside bankruptcy.[26]

The Bank does not have an underlying debt in this bankruptcy or under nonbankruptcy law that exceeds the value of its *in rem* claim. The Bank's debt equals the value of the Bank's

---

[25] 8 COLLIER ON BANKRUPTCY ¶1325.06[3][a][ii] at 1325-33 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2007) (footnote omitted).

[26] *Larios,* 259 B.R. at 679 (citing *Matter of Wheaton Oaks Office Partners Ltd. Partnership,* 27 F.3d 1234, 1241 (7th Cir. 1994) (goal is to ensure creditor is afforded in bankruptcy the same protection he would have under state law) (citing *Butner*, 440 U.S. 48, 56 (1979))).

lien. Debtors' plan proposes to pay the Bank the value of its lien and that upon such payment, the lien shall be released. Accordingly, Debtors' plan conforms with §1325(a)(5). This result is in conformity with *Johnson v. Home State Bank* wherein the Supreme Court specified that what remained for the creditor is an *in rem* claim against the debtor, which *in rem* claim was defined as the creditor's right to payment in the proceeds from the liquidation of the collateral or its right to foreclose its lien in the collateral. It is exactly this value that the debtor pays under his plan. There is not a requirement in *Johnson* that in order to accomplish this goal the debtor must receive a discharge in his bankruptcy proceeding and the Amendment does not require that discharge is the only endpoint to effect the stripdown of a lien. Section 1328(f) was not enacted to prohibit the stripdown of secured claims in which the underlying debt had been previously discharged in a prior Chapter 7 proceeding and, as explained above, the Amendment does not require such conclusion. As reflected in *Johnson*, this Court may employ §105 with regard to plan confirmation.[27] Although not necessary to reconcile the pertinent Code provisions, this Court may employ such broad equitable powers to reach a logical ruling in concert with various Code provisions.

### Conclusion

For the foregoing reasons and the reasons set forth more fully at the confirmation hearing, Debtors' Chapter 13 plan was confirmed. This Memorandum Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. An Order Confirming Chapter 13 Plan shall issue forthwith.

###

---

[27] *Id.*

- 9 -
09.06.19 Picht Order on Remand.wpd
Case 08-20677    Doc# 81    Filed 06/20/09    Page 9 of 10

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS